**BRENNER INCOME TAX CENTERS, INC., By William A. BRENNER, its President, and William A. Brenner, Individually, and Brenner Enterprises, Inc., Plaintiffs,**

v.

**DIRECTOR OF PRACTICE OF THE INTERNAL REVENUE SERVICE, Defendant.**

**No. 99 CIV. 12491 CM.**

United States District Court, S.D. New York.

March 1, 2000.

Brenner Income Tax Centers, Inc., Grahamsville, NY, Pro se.

William A. Brenner, Grahamsville, NY, Pro se.

Brenner Enterprises, Inc., Grahamsville, NY, Pro se.

## MEMORANDUM ORDER DENYING INJUNCTION

McMAHON, District Judge.

*Summary*

William A. Brenner ("Brenner"), Brenner Income Tax Centers, Inc. ("Brenner Income Tax Centers"), and Brenner Enterprises, Inc. ("Brenner Enterprises") bring this action challenging the March 8, 1999 final decision of the Director of Practice of the Internal Revenue Service sustaining the decision of the Director of the IRS Andover Service Center to suspend Plaintiffs from the Electronic Filing Program for Form 1040, U.S. Individual Tax Returns (the "ELF Program") due to fail-

ure to file timely income tax returns. Plaintiffs seek an injunction directing the IRS to reinstate Brenner and Brenner Income Tax Centers in the ELF Program. Based on a review of the facts and the law, the injunction is denied.

## Facts

### A. Electronic Filing Program

Mr. Brenner filed a Form 8633 Application solely in the name of Brenner Income Tax Centers on October 3, 1991. (IRS Andover Service Center Printout for EFIN 140345, attached to Normand Decl. as Exh. B; see also Complaint ¶ 5.) On November 22, 1996, Mr. Brenner filed a Form 8633 Application on behalf of Brenner Enterprises "doing business as" Brenner Income Tax Centers. (Form 8633 Application, attached to Normand Decl. as Exh. A.) The Form 8633 Application specified that Mr. Brenner was the president and sole principal and responsible official of the company. (Id.) On December 2, 1996, the IRS assigned the company the Electronic Filing Number ("EFIN") 141090. (Dec. 2, 1996 Letter from Thomas M. Quinn to Brenner Income Tax Centers and William A. Brenner, attached to Normand Decl. as Exh. C.)

### B. Plaintiffs' Suspension from the ELF Program

On July 10, 1998, the Andover Service Center of the IRS conducted a routine "suitability check" on EFIN 141090 and found that the 1997 tax return for Brenner Enterprises had not been filed. Additionally, although an extension had been requested for the 1996 fiscal year tax return, the return was filed beyond the extension deadline. ( Initial Suitability Recommendation, attached to Normand Decl. as Exh. D.) On July 17, 1998, a follow-up suitability check confirmed that for the tax period ending September 30, 1997, no corporate tax return had been filed, and no extension

had been requested. (Id.) Accordingly, on July 31, 1998 the Director of the Andover Service Center notified Plaintiffs that, pursuant to Revenue Procedure 97–60, the IRS was suspending them from participation in the ELF Program based on their failure to file a fiscal year Form 1120 corporate income tax return for 1997.[1] (July 31, 1998 Letter from Thomas M. Quinn to Brenner Income Tax Centers and William A. Brenner, attached to Normand Decl. as Exh. E.)

### C. Plaintiffs' Administrative Appeals

On August 28, 1998, Plaintiffs appealed the suspension in writing and advised the IRS that they were in the process of filing the 1997 return and that the delay was due to theft and embezzlement during 1997, which left business records either missing or inaccurate. (Aug. 28, 1998 Letter from William A. Brenner to Thomas M. Quinn, attached to Normand Decl. as Exh. F.) Mr. Brenner noted that no federal tax was due and that the New York State tax had been paid. (Id.) A request was made for an extension of 30 days to file the return for 1997. (Id.)

In connection with Plaintiffs' appeal, the Andover Service Center conducted another suitability check on EFIN 141090 on September 8, 1998. (First Appeal–Service Center Suitability Recommendation, attached to Normand Decl. as Exh. G.) This check revealed that Brenner Enterprises had filed untimely returns for fiscal years 1994, 1995 and 1996. (Id.)

On September 15, 1998, Mr. Brenner informed the Director of the Andover Service Center that he had filed the Brenner Income Tax Centers' Form 1120S 1997 corporate income tax return on September 14, 1998. (Sept. 15, 1998 Letter from William A Brenner to Thomas M. Quinn, attached to Normand Decl. as Exh. H.) Mr. Brenner explained that the lateness was

---

1. Brenner Enterprises has an employer identification number of 14–1771628 and files a Form 1120 corporate income tax return.

(Declaration of Vincent J. Simone dated January 28, 2000 ("Simone Decl.") ¶ 4).

due to the misconduct of his General Manager who had stolen and manipulated records. (*Id.*)

On September 25, 1998, the Director of the Andover Service Center notified Plaintiffs that although the additional information had been considered, the agency adhered to its decision of suspension. (Sept. 25, 1998 Letter from Thomas M. Quinn to Brenner Income Tax Centers and William A. Brenner, attached to Normand Decl. as Exh. I.) The letter alerted Plaintiffs that they could appeal this decision to the Director of Practice within thirty days. (*Id.*)

In anticipation of Plaintiffs' administrative appeal, the Andover Service Center conducted a final suitability check on EFIN 141090 on September 29, 1998. (DOP Appeal Suitability Recommendation, attached to Normand Decl. as Exh. J.) This suitability check confirmed that Brenner Income Tax Centers' Form 1120S for 1997 had been filed late and that no extension had been requested. (*Id.*) It also revealed that Brenner had been "late in filing his [individual Form] 1040's." (*Id.*) The IRS concluded that "filer consistently files extensions and then files after [the] extension date." (*Id.*)

Mr. Brenner appealed the Andover Service Center's decision to the IRS Director of Practice on October 16, 1998. (Oct. 16, 1998, Letter from William A. Brenner to Director of Practice, attached to Normand Decl. as Exh. K.) In the letter, Mr. Brenner noted again that embezzlement and theft of records caused the late filing of Brenner Income Tax Center's 1997 return, but that it had been completed and mailed to the IRS on September 14, 1998, and received by the IRS on September 19, 1998. (*Id.*) Mr. Brenner noted his concern that the IRS letter of September 25, 1998 and his letter of September 15, 1998 may have crossed in the mail. (*Id.*)

### D. *The Decision on Appeal*

On March 8, 1999, the IRS Director of Practice issued a Decision on Appeal. (March 8, 1999 Letter from Vincent J. Simone for Patrick W. McDonough to Brenner Enterprises, Inc. d\b\a Brenner Income Tax Centers and March 8, 1999 Decision on Appeal of Patrick W. McDonough, attached to Normand Decl. as Exh. L.) In the Decision on Appeal, the Director of Practice noted that pursuant to section 13 of Revenue Procedure 97–60, the IRS reserves the right to rescind the electronic filing privileges of any electronic filer who violates any provision of the Revenue Procedure. *See* Rev. Pro. 97–60 § 13. Among the reasons the Director noted for which an electronic filer may be suspended was "failure to timely file tax returns, both business and personal." (March 8, 1999 Decision on Appeal of Patrick W. McDonough, attached to Normand Decl. as Exh. L.) The Andover Service Center's decision to suspend Plaintiffs, the Director of Practice observed, "was based among other reasons on [Brenner Enterprises d\b\a Brenner Income Tax Centers'] failure to timely file its 1997 Form 1120 tax return." (*Id.*)

The Plaintiffs' explanation that the delay was a result of theft and embezzlement was considered by the Director of Practice, who nonetheless determined that "[Plaintiff] failed to establish that it had reasonable cause for its failure to timely file its 1997 Form 1120 Tax Return." (*Id.*) In addition, the Director of Practice noted that "implicit trust must be placed on electronic filers to possess a high degree of integrity as well as to be in compliance with the revenue laws." (*Id.*) He concluded that Plaintiffs' failure to timely file "does not reflect the degree of compliance...to satisfy the minimum requirements necessary for participation in the ELF program." (*Id.*)

Mr. Brenner subsequently sent the IRS several letters requesting reconsideration of the Decision on Appeal and reinstatement in the ELF Program. (March 11, 1999 Letter from William A. Brenner and Brenner Enterprises Inc. d\b\a Brenner Income Tax Centers to Patrick W. McDon-

ough, attached to Normand Decl. as Exh. M; June 11, 1999 Letter from William A. Brenner to Fred Mastromarino, attached to Normand Decl. as Exh. N.) The Director of Practice considered Plaintiffs' submissions and held several discussions with Mr. Brenner concerning the suspension. (Simone Decl. ¶ 12.) On June 14, 1999 the Director of Practice notified Plaintiffs that their appeal had been fully considered, and that the Decision on Appeal was final and not subject to further appeal. (June 14, 1999 Letter from Vincent J. Simone for Patrick W. McDonough to Brenner Enterprises, Inc. d\b\a Brenner Income Tax Centers, attached to Normand Decl. as Exh. O.) A July 15, 1999 letter from Mr. Brenner claimed he had sent the IRS a letter, but had not received a reply. (July 15, 1999 Letter from William A. Brenner to Vincent J. Simone and Patrick W. McDonough, attached to Normand Decl. as Exh. P.)

On August 26, 1999, Brenner Enterprises, Inc. d\b\a Brenner Income Tax Centers, submitted a new Form 8633 Application to participate in the ELF Program. (IRS Andover Service Center Printout for EFIN 141348, attached to Normand Decl. as Exh. Q.)[2] The Andover Service Center denied the application after Mr. Brenner's social security number, which was included in the application, failed an initial suitability check on September 2, 1999. (Id.) The Andover Service Center subsequently advised Plaintiffs that their application had been denied both because of the outstanding suspension and because Brenner had a balance due on his 1996 and 1997 individual income tax returns. (Sept. 13, 1999 Letter from Carol J. Stender–Larkin to Brenner Income Tax Centers and William Brenner, attached to Normand Decl. as Exh. R.)

On December 17, 1999, Plaintiffs again requested reconsideration of the suspension, relying on the Handbook for Electronic Filers 4(b) which listed as a reason for suspension the "failure to file timely and accurate business and personal tax returns." Plaintiff noted the difficulty of making timely filings given his circumstances. (Dec. 17, 1999 Letter from William A. Brenner to Vincent J. Simone and Patrick W. McDonough, attached to Normand Decl. as Exh. S; Simone Decl. ¶ 12.) When that effort failed, Plaintiffs filed the instant action seeking injunctive relief, including a temporary restraining order, requiring the Director of Practice to reinstate Mr. Brenner and Brenner Income Tax Centers (EFIN 14035) in the ELF Program and to terminate Brenner Enterprises (EFIN 141090) from the ELF Program nunc pro tunc without prejudice or "suspension by association" to Brenner's or Brenner Income Tax Center's participation in the ELF Program. (Complaint, Relief Requested ¶¶ 1–2.)

The Complaint further stated that, during its existence, Brenner Enterprises, Inc. has not conducted any business. (Complaint, Count II, ¶ 11.) Additionally, Plaintiffs state that "upon information and belief, ... on or around June 26, 1996, the state of New York dissolved Brenner Enterprises, Inc. and that as a result, it is not an existing corporation."[3] (Id. ¶ 12.) However, Mr. Brenner inadvertently continued to file Federal 1120 tax returns for Brenner Enterprises, Inc. for 1995, 1996, 1997 and 1998 and also inadvertently filed for EFIN number 141090, although Plaintiffs claim that it was never used. (Id. ¶¶ 13,14,15.) Finally, Plaintiffs asserted that the denial of participation in the ELF

---

**2.** Although this Form 8633 Application was submitted on behalf of Brenner Enterprises d*b*a Brenner Income Tax Centers, it was filed under Brenner Income Tax Centers' employer identification number (14–1648483). (IRS Andover Service Center Printout for EFIN 141348, attached to Normand Decl. as Exh. Q.)

**3.** Since Plaintiffs first raise this issue in the Complaint, it is immaterial to our review of the decision of the Director of Practice of the IRS.

Program would threaten the survival of its business; it would not be able to offer the speedier refunds and other benefits of electronic filing which enable it to be competitive in the tax preparation business. (Complaint, Count III, ¶ 23.)

At a Show Cause Hearing on January 19, 2000, this Court denied Plaintiffs' application for a temporary restraining order.

## Discussion

### A. Standard for Injunctive Relief

The standards for obtaining a preliminary injunction are well settled.

> A party seeking a preliminary injunction must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor.

*Forest City Daly Housing, Inc. v. Town of North Hempstead,* 175 F.3d 144, 149 (2d Cir.1999). *Accord Statharos v. New York City Taxi & Limousine Comm'n,* 198 F.3d 317, 321 (2d Cir.1999); *Beal v. Stern,* 184 F.3d 117, 122 (2d Cir.1999).

Where the Court is being asked to enjoin government action, a higher threshold must be met. "One exception to the ordinary standard is that, where a preliminary injunction is sought against government action taken in the public interest pursuant to a statutory or regulatory scheme, the less demanding 'fair ground for litigation standard' is inapplicable, and therefore a 'likelihood of success' must be shown." *Forest City,* 175 F.3d at 149; *accord Beal,* 184 F.3d at 122. "This higher standard reflects judicial deference toward 'legislation or regulations developed through presumptively reasoned democratic processes'" *Forest City,* 175 F.3d at 149 (quoting *Able v. United States,* 44 F.3d 128, 131 (2d Cir.1995) (per curiam)).

"An even more rigorous standard, requiring a 'clear' or 'substantial' showing of likelihood of success applies [if the requested] injunction 'will alter, rather than maintain, the status quo,'. . ." *Forest City,* 175 F.3d at 149–50 (quoting *Tom Doherty Assocs. v. Saban Entertainment, Inc.,* 60 F.3d 27, 33 (2d Cir.1995)).

### B. Irreparable Harm

"Irreparable harm is 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *Forest City,* 175 F.3d at 153 (quoting *Rodriguez v. DeBuono,* 162 F.3d 56, 61 (2d Cir.1998)). The courts of this circuit have generally found that the termination of most or all of a business is "irreparable harm." *See, e.g., Roso–Lino Bev. Distributors, Inc. v. Coca–Cola Bottling Co. of New York, Inc.,* 749 F.2d 124 (2d Cir.1984). "But the loss of business need not be total, so long as it is so great as to seriously compromise the company's ability to continue in its current form." *Galvin v. New York Racing Association,* 70 F.Supp.2d 163, 169 (E.D.N.Y. 1998). Thus, the risk that a company's customers will turn to competitors may constitute "irreparable harm." *Id.* (citing *Jacobson & Co. v. Armstrong Cork Co.,* 548 F.2d 438, 444–45 (2d Cir.1977)).

■ Mr. Brenner claims irreparable harm as a result of not being able to participate in the electronic filing program. Because tax preparation is his business and livelihood, and because electronic filing constitutes a significant portion of his business, this Court finds that he is threatened with harm to his livelihood for which injunctive relief would be appropriate were he likely to succeed in this case. However, because he is not, I must deny injunctive relief.

### C. Likelihood of Success on the Merits

In reviewing an agency decision under the Administrative Procedure Act,[4] a dis-

---

**4.** Plaintiffs bring this action pursuant to section 702 of the Administrative Procedure Act,

trict court may set aside an agency's findings, conclusions or actions only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1999). "An agency rule may be deemed arbitrary, capricious or an abuse of discretion if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Henley v. Food & Drug Admin.*, 77 F.3d 616, 620 (2d Cir.1996) (quoting *Motor Vehicle Manufacturers Association of U.S. v. State Farm Mut. Auto. Inc. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

Although the scope of judicial review under this standard is narrow and deferential, "a reviewing court must be certain that an agency has considered all the important aspects of the issue and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Henley*, 77 F.3d at 620 (citation and internal quotation marks omitted). "However, a reviewing court cannot 'substitute its judgment for that of the agency.'" *Id.* at 620 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)).

The IRS has authority to set guidelines for the exercise of the privilege of participating in the ELF Program, and the Plaintiffs were notified of these requirements. *See* Rev. Proc. 97–60,[5] 1997–52 I.R.B. 39. The IRS may suspend an electronic filer from participation in the ELF Program with or without prior notice, for "violating

any provision" of the Revenue Procedure. *Id.* at §§ 13.01, 13.07. An electronic filer's "failure to file timely and accurate tax returns, including returns indicating that no tax is due," is ground for immediate suspension of the electronic filer, including its principals and responsible officials, from the ELF Program. *Id.* at §§ 4.19, 4.19(2), 13.07(1). In addition, when a principal or responsible official is suspended from the ELF program, every entity that listed the suspended principal or responsible official on its Form 8633 Application may also be suspended. *Id.* at § 13.02. These rules are rationally related to the IRS' mission of assuring taxpayers that paid preparers understand and will abide by all relevant rules.

In this case the Plaintiffs have acknowledged that the 1997 tax returns for Brenner Enterprises and Brenner Income Tax Centers were filed late. Given the evidence in the Record of Brenner Enterprises d\b\a Brenner Income Tax Centers' failure to request an extension for 1997, late filing of its 1997 return, and the history of late filings, not only for Brenner Enterprises d\b\a Brenner Income Tax Centers, but also for Mr. Brenner individually, I do not find that the Decision on Appeal of the Director of Practice was arbitrary, capricious or an abuse of discretion.

The Director of Practice has discretion to determine whether Plaintiffs' proffered excuse overrides the failure to timely file tax returns. The Director weighed the excuse with the history of late filings and determined that the suspension was appropriate. Under these facts, this decision was not an abuse of discretion.

---

5 U.S.C. § 551 et. seq., which "permits a party to bring an equitable claim challenging arbitrary and capricious action of an administrative agency in federal district court." *Up State Federal Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir.1999) (per curiam).

**5.** Revenue Procedure 97–60 has since been amended by Revenue Procedure 98–50, which among other things, changed the name of the ELF Program to the "Form 1040 IRS *e-file* Program." However, the provisions of Revenue Procedure 97–60 that are relevant to Plaintiffs' suspension were not amended.

In addition, Plaintiffs received ample notice and opportunity to be heard on the grounds for their suspension from the ELF Program. Plaintiffs wrote the agency at least seven letters concerning the suspension, each of which was reviewed and considered by the IRS. The IRS continued to review Plaintiffs' submissions even after the Director of Practice had issued his final decision. Additionally, representatives of the IRS discussed the suspension with Mr. Brenner on numerous occasions during the administrative process, and again in mid-December, 1999.

### Conclusion

Plaintiffs have failed to provide a showing of a "clear" or "substantial" likelihood of success on the merits, which is required since the injunction would require the IRS to reinstate Plaintiffs in the ELF Program. Accordingly, the request for injunctive relief is hereby denied.