Larisa A. **HUMPHREY**, Plaintiff,

v.

**UNITED STATES of America,
Defendant.**

**Civil Action No. 1:11–CV–01647–SCJ.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 19, 2011.

Larisa A. Humphrey, Snellville, GA, pro se.

James C. Strong, Natalie Sexsmith, U.S. Department of Justice–Tax Division, Washington, DC, for Defendant.

### *ORDER*

STEVE C. JONES, District Judge.

THIS MATTER is before the Court on Defendant's Motion to Dismiss [Doc. No. 4]. For reasons given below, the motion is **DENIED.**

## BACKGROUND

Plaintiff is a tax preparer who sold a tax shelter program (the "Shelter") that the Internal Revenue Service ("IRS") deemed abusive [Doc. No. 1, pp. 5–7]. Because of Plaintiff's tax shelter sales, the IRS levied a $101,469.00 penalty against her (the "Penalty"), and suspended her from participating in its e-file program for two years (the "Suspension") [*id.* at pp. 11–13]. Plaintiff now seeks, *inter alia*, to have the Penalty abated and the IRS enjoined from enforcing the Suspension [*id.* at p. 22].

The Shelter was tied to a program (the "Program") sold by AdaCom, Inc., formerly AdaCon Advantage Company, Inc. ("AdaCon") [*id.* at p. 4]. The Program was marketed as a communication tool for speech-impaired and hearing-impaired individuals that allowed for direct communication with businesses [*id.*]. Subscribing businesses essentially paid $2,500 to enroll in the Program, and the subscribers were told they could obtain a $5,000 "disabled access" tax credit [*id.*].

AdaCon initially marketed the Shelter directly to small businesses, but then AdaCon shifted its focus to enlisting tax preparers who could sell the Shelter to small businesses [Doc. No. 1–5, p. 8]. The tax preparers earned a commission ranging from $500 to $750 for each sale [*id.*].

Plaintiff sold the Shelter from 2002 through 2004 and earned $101,459.00 in commissions on her sales [*id.*].

In 2006, the United States tax court held that the Program did not qualify for the disabled access tax credit and that the Shelter was an abusive tax shelter [*id.*].

On September 10, 2007, the IRS sent a "Notice of Penalty Charge" to Plaintiff, informing her that she had been assessed a $101,459.00 penalty for "promoting an abusive tax shelter" (the "Penalty") [Doc. No. 1–8, p. 1]. The IRS had determined

that Plaintiff made gross valuation overstatements in connection with her sales of the Shelter [Doc. No. 1–5, pp. 4–6]. The notice informed Plaintiff that she could challenge the Penalty by paying 15 % of the assessment and filing a claim for refund on a Form 6118 [Doc. No. 1–8, p. 1].

Plaintiff paid 15% of the Penalty and timely filed her refund claim with the IRS [Doc. No. 1–9, p. 1].

In January of 2009, the IRS notified Plaintiff that she would likely be suspended from the e-file program for one year because of the Penalty that had been assessed against her [Doc. No. 1, p. 11].

On October 20, 2009, Plaintiff's refund claim was denied, and in December of that year, she was notified that she would be suspended for 2 years due to the Penalty [*id.* at p. 12]. The suspension began on April 16, 2009 [*id.* at pp. 12–13].

After Plaintiff exhausted her appeals with the IRS, she filed this action on May 20, 2011 [*id.* at p. 13]. Count I seeks abatement of the Penalty [*id.* at p. 15–16]. In Count II, Plaintiff alleges she is entitled to a refund of the 15% portion of the Penalty that she has paid [*id.* at pp. 16–17]. Counts III and IV respectively seek to enjoin the IRS from enforcing the Suspension [*id.* at pp. 18–19]. In Count V, Plaintiff asks for costs and fees [*id.* at p. 20–21]. And in Count VI, she demands a jury trial [*id.* at 21].

Defendant now moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [Doc. No. 4–1, p. 1]. Defendant's main argument is that this Court lacks jurisdiction because Plaintiff (1) filed this action late and (2) failed to pay enough of her penalty.

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim over

which it lacks jurisdiction. "A Rule 12(b)(1) motion supports two forms of challenges to subject matter jurisdiction—a facial attack and a factual attack." *Am. Ins. Co. v. Evercare Co.,* 699 F.Supp.2d 1355, 1358 (N.D.Ga.2010). When adjudicating a facial attack, "the Court presumes the facts in the Complaint to be true and determines whether those facts sufficiently allege a basis of jurisdiction." In this case, Defendant has launched a facial attack, arguing that the facts in the Complaint show that this Court lacks jurisdiction.

## II. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 561–62, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the prior standard, which allowed a claim to proceed unless it appeared "beyond doubt" the plaintiff could not prove a set of facts that stated a claim). In *Iqbal,* the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949.

In *Twombly,* the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S.Ct. 1955. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. 1955 (internal citations and emphasis omitted).

## DISCUSSION

Defendant's Motion to Dismiss must be denied because Plaintiff timely filed this action and paid an appropriate portion of her penalty; therefore, this Court has jurisdiction over this matter, which could result in relief that would undercut the basis of the Penalty and Suspension. The Court will first discuss the jurisdictional issue, and then turn to the Counts I through VI.

## I. This Court Has Jurisdiction Over Plaintiff's Action

■ This Court has jurisdiction over Plaintiff's action because she filed for a refund with the IRS, paid the requisite portion of her penalty, and timely filed her action. The district courts have original jurisdiction over "any civil action against the United States for the recovery of ... any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346(a)(1). In general, a taxpayer must meet the following requirements before filing a district court challenge to a penalty: she must (1) file for a refund with the IRS, (2) pay the penalty in full,[1] (3) wait until the refund claim is denied or 6 months have passed (whichever is earlier), and (4) file the claim within 2 years of being notified that the refund claim was denied. 26 U.S.C.

---

1. This requirement is known as the "full-payment rule." *Flora v. United States,* 362 U.S. 145, 156, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960).

§§ 6532(a), 7422(a); *Flora*, 362 U.S. at 145, 155, 176, nn. 37–38, 80 S.Ct. 630.

The main issues in this case turn upon two exceptions to the full-payment rule. The first exception: under 26 U.S.C. § 6703, if the taxpayer (1) files for a refund within 30 days of receiving notice of a section 6700 penalty and (2) pays 15% of that penalty, the taxpayer can file an action in the district court without having to pay the full balance of the penalty. Here, the issue regarding the first exception is whether the exception expires when a taxpayer fails to sue within 30 days of either (1) the IRS denying the refund claim or (2) the passing of 6 months from when the taxpayer filed for a refund (whichever is earlier). 26 U.S.C. § 6703(c)(2). Under the second exception to the full-payment rule, a taxpayer can pay some divisible portion of the section 6700 penalty—as opposed to the full penalty—and file her action. The degree to which a section 6700 penalty is divisible is a novel question that this Court must answer. The Court will discuss each exception in turn.

### A. 26 U.S.C. § 6703 Does Not Provide This Court With Jurisdiction

██ Plaintiff failed to bring a claim within the time required under 26 U.S.C. § 6703(c); therefore, the statute cannot provide a jurisdictional hook for this district court action. The statute provides:

**(c) Extension of period of collection where person pays 15 percent of penalty.—**

**(1) In general.—**If, within 30 days after the day on which notice and demand of any penalty under section 6700 or 6701 is made against any person, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, no levy or proceeding in court

for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of a proceeding begun as provided in paragraph (2). Notwithstanding the provisions of section 7421(a), the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court. . . .

**(2) Person must bring suit in district court to determine his liability for penalty.—**If, within 30 days after the day on which his claim for refund of any partial payment of any penalty under section 6700 or 6701 is denied (or, if earlier, within 30 days after the expiration of 6 months after the day on which he filed the claim for refund), the person fails to begin a proceeding in the appropriate United States district court for the determination of his liability for such penalty, paragraph (1) shall cease to apply with respect to such penalty, effective on the day following the close of the applicable 30–day period referred to in this paragraph.

26 U.S.C. 6703(c). While subsection 6703(c) explicitly extends a taxpayer's repayment window, the statute also relaxes the full-payment rule by allowing a taxpayer to pay only 15% before suing in the district court. 26 U.S.C. § 6703(c); *Dalton v. United States*, 800 F.2d 1316, 1318 (4th Cir.1986); *Korobkin v. United States*, 988 F.2d 975, 977 (9th Cir.1993); *Noske v. United States*, 911 F.2d 133, 136 (8th Cir. 1990). There is, however, a catch: the 15% exception found in subsection 6703(c)(1) expires if the taxpayer violates subsection (c)(2). Thus, a taxpayer can only avail herself of the 15% exception if she sues within 30 days of either (1) the IRS denying the refund claim or (2) the passing of 6 months from when she filed

for a refund (whichever is earlier). 26 U.S.C. § 6703(c)(2); *Dalton*, 800 F.2d at 1318.

Plaintiff contends that "[n]othing in the language of subsection 6703(c) places a limit on a taxpayer's ability to bring a suit in district court for the assessment of a section 6700 penalty; therefore, section 6703(c) does not prohibit this Court from adjudicating [Plaintiff's] claims" [Doc. No. 6, p. 10]. Plaintiff thus seems to argue that a taxpayer can claim the benefit of subsection 6703(c)(1)—paying 15% and suing in district court—without suffering the time limits in subsection (c)(2).

The court need not delve into the semantics of whether subsection 6703(c) places a limit on taxpayer lawsuits because the statute's requirements are clear: if a taxpayer fails to timely file an action as prescribed in 6703(c)(2), then the benefit in 6703(c)(1) expires. And in this case, Plaintiff admits that she failed to bring this action within 6 months of filing for a her refund; thus, Plaintiff cannot rely upon the 15% exception in subsection 6703(c) to invoke jurisdiction.

### B. This Court Has Jurisdiction Because Plaintiff Paid a Divisible Portion of Her Penalty and Met the Other Jurisdictional Requirements

■ This Court has jurisdiction because Plaintiff fulfilled the jurisdictional requirements: she filed for a refund with the IRS, paid a sufficient portion of her penalty, and brought this action more than six months after filing for a refund and within 2 years of being notified that the refund was denied. 26 U.S.C. §§ 6532(a), 7422(a); *Flora*, 362 U.S. 145, 155, 176, nn. 37–38, 80 S.Ct. 630. The Court will first discuss why a partial payment of the Penalty was sufficient to invoke jurisdiction. Then the Court will turn to the other requirements.

### 1. Paying the Penalty for One Sale Was Sufficient

Contrary to Defendant's argument, Plaintiff could pay the penalty owed on one sale in order to satisfy the "full-payment" rule. In *Flora*, the Supreme Court noted that "excise tax assessments may be divisible into a tax on each transaction or event, so that the full-payment rule would probably require no more than payment of a small amount." *Flora*, 362 U.S. at 176, n. 38, 80 S.Ct. 630. Subsequently, courts applied the divisible tax rule to penalties that were "divisible assessments," including penalties levied under the pre–1990 version of section 6700. *See, e.g., Steele v. United States*, 280 F.2d 89, 90–91 (8th Cir.1960) (holding as divisible a penalty imposed against an employer that failed to remit its employees' tax withholdings); *Noske*, 911 F.2d at 137 (discussing a line of cases which held that a section 6700 penalty was divisible under the pre–1990 version of the statute). In general, the touchstone of divisibility is whether a penalty can be divided into separate assessments; that is, whether the penalty can be divided into constituent parts. *See, e.g., Flora*, 362 U.S. at 176, nn. 37–38, 80 S.Ct. 630; *Boynton v. United States*, 566 F.2d 50, 52 (9th Cir.1977) (holding that a tax was divisible because it was "a cumulation of separable assessments") (citing *Steele*, 280 F.2d at 89).

Few cases have addressed the divisibility of a section 6700 penalty, and they generally discuss the pre–1990 version of the statute. Although the pre–1990 statute is quite different from the current version, there is much to be learned from the cases that grappled with the old language. Under the pre–1990 statute, a person who sold an abusive tax shelter owed a "penalty equal to the greater of $1,000 or 20 percent of the gross income derived or

to be derived by such person from such activity." 26 U.S.C. 6700(a) (1984). Circuits were split over whether the penalty was divisible because of the indeterminate nature of the word "activity," as used in the statute. Some courts reasoned that "activity" referred to an individual transaction rather than the cumulative tax shelter transactions, and therefore the $1,000 penalty was divisible because it was calculated on a per transaction basis. *See, e.g., Gates v. United States,* 874 F.2d 584, 586–87 (8th Cir.1989) (discussing the differing readings of "activity"); *Cohen v. United States,* 844 F.Supp. 758, 760–61 (S.D.Fla.1994) (discussing the $1,000 per transaction penalty). For example, in *Noske,* a plaintiff was assessed a $186,000 penalty under section 6700 ($1,000 per 186 transactions), and jurisdiction was appropriate because the plaintiff paid $1,000 before suing, which represented a single portion of her grand penalty assessment.[2] And until *Gates,* "the IRS also interpreted section 6700 as authorizing penalties [of] $1,000 per sale or transaction, that is, as 'divisible,' and, thus, as an exception to the *Flora* full-payment rule." *Noske,* 911 F.2d at 136. Other courts differed, and held that "activity" referred to the cumulation of all the transactions, and thus (1) the $1,000 penalty "was a yearly minimum, not a per-transaction minimum," and (2) all section 6700 penalties were nondivisible because "[l]iability ... based on total yearly volume is the hallmark of a nondivisible assessment."[3] *See, e.g., Korobkin,* 988 F.2d at 977.

The take away from the pre–1990 cases is that a section 6700 was divisible when and because the word "activity" was construed as a single sale or transaction, and nondivisible when and because "activity" was understood as the cumulation of all sales or transactions. *See, e.g., Gates,* 874 F.2d at 586–87.

Congress ended the confusion over "activity" by amending section 6700 and clarifying that "activity" refers to an individual sale; and in so doing, Congress returned the penalty to its divisible state. *Compare* 26 U.S.C. 6700(a) (2011) *with* 26 U.S.C. 6700(a) (1985). The statute now reads in part:

(a) **Imposition of penalty.**—Any person who—

(1)(A) organizes (or assists in the organization of)—

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)—

. . . .

(B) a gross valuation overstatement as to any material matter,

shall pay, with respect to each activity described in paragraph (1), a penalty equal to the $1,000 or, if the person establishes that it is lesser, 100 percent of the gross income derived (or to be derived) **by such person from such activity. For purposes of the preceding sentence, activities de-**

---

**2.** *Noske* ultimately held that section 6700 penalties were nondivisible, but the court refused to apply that holding retroactively, which would have vitiated jurisdiction. *Noske,* 911 F.2d at 136.

**3.** And still other court held that a § 6700 should be assessed once as opposed to annually. *See, e.g., Gates,* 874 F.2d at 588.

scribed in paragraph (1)(A) with respect to each entity or arrangement shall be treated as a separate activity and participation in each sale described in paragraph (1)(B) shall be so treated.

26 U.S.C. § 6700(a) (emphasis added).

Plaintiff was penalized for making gross valuation overstatements in connection with her sales of an abusive tax shelter; that is, she allegedly violated subsections (2)(B) and (1)(B) respectively. For our purposes, the best way to make sense of the statutory language is to consider the term "activity" to be a variable, and fill it in with the word "sale" [4]: thus, a taxpayer, "shall pay, with respect to each [sale], a penalty equal to the $1,000 or, if the taxpayer establishes that it is lesser, 100 percent of the gross income [she] derived ... from such [sale]." Thus, no matter if a sale requires a penalty of $1,000, or some lesser amount, that penalty is always a function of a single sale, and a grand penalty assessment that is a cumulation of multiple sales is always separable into single sales. It is this divisible nature of section 6700 penalty assessments that renders them divisible. Indeed, courts have consistently recognized that section 6700 penalties are divisible when they are a cumulation of per transaction penalties. *See, e.g., Noske,* 911 F.2d at 136–37; *Hankin v. United States,* 891 F.2d 480, 481–82 (3d Cir.1989); *Planned Invests., Inc. v. United States,* 881 F.2d 340, 342 n. 3 (6th Cir.1989); *Cohen,* 844 F.Supp. at 761; *Henkell v. United States,* No. S–96–2228–MLS–GGH, S–97–0017–MLS–GGH, 1998 WL 41565, at *4 (E.D.Cal. Jan. 09, 1998).

Indeed, Defendant concedes that the $1,000 per sale penalty is divisible under the current version of section 6700. But Defendant argues that once the gross income from a sale dips below $1,000, the penalty is no longer divisible. Which is to say, Defendant argues that a $1,000 per sale penalty is divisible, whereas a $999.99 per sale penalty is not. There is, however, no legally significant difference between the two sales.

Defendant contends that the penalty here is nondivisible because Plaintiff earned less than $1,000 per sale, and thus the IRS calculated the Penalty by totaling her yearly gross sales income, which method "is the hallmark of a nondivisible assessment" [Doc. No. 4–1, p. 10 (citing *Korobkin,* 988 F.2d at 977)]. However, the court does not agree with this argument because the language in section 6700 renders the Penalty divisible.

The IRS sent Plaintiff a Form 886–A, which explains how the Penalty was calculated. Instead of making a per sale calculation, the IRS used a gross annual income method. Specifically, the IRS knew that tax preparers like Plaintiff earned anywhere from $500 to $750 per sale. Thus, Plaintiff's per transaction penalty would be "the gross income derived from each activity," rather than $1,000 per transaction, and Plaintiff's overall penalty would simply equal the total gross income she received for all of her sales [Doc. No. 1–5, p. 6]. Accordingly, the IRS could accurately tabulate the Penalty without regard to the individual sales so long as the IRS had adequate records of the Plaintiff's total gross income from the combined sales. And the IRS knew the total gross income because the IRS had all the 1099–B's received by Plaintiff that were issued to AdaCon [*id.*]. The IRS then totaled the annual gross reflected in the 1099–B's.

---

4. Indeed, this Court has no choice but to construe "activity" as a single sale or transac-

tion.

But section 6700 clearly requires a per sale method for calculating a penalty: (1) if the taxpayer grossed at least $1,000 from an individual sale, the penalty is $1,000; and (2) if the taxpayer can show that she grossed less than $1,000 from an individual sale, the penalty is the gross from that individual sale. 26 U.S.C. § 6700(a). The statute does not compel or allow the use of an annual gross income method. No matter the amount of the penalty or the income earned from a sale, the relevant quantum is an individual sale.

While the IRS's annual income method for calculating the Penalty was practical, the method could not render the Penalty nondivisible. The IRS (1) bypassed the statutory method by adopting Plaintiff's burden of showing that the gross income from each individual sale was less than $1,000, and (2) then the IRS used the annualized figures from the 1099–B's to calculate Plaintiff's penalty [Doc. No. 1–5, pp. 5–6, 8, 11–12]. This Court will not prevent the IRS from using the most efficient method of calculating a penalty, so long as the method is accurate. However, no matter how the IRS calculates a penalty, the fundamentally divisible nature of that penalty, which is a function of Congress's language, remains the same.

Moreover, there are a host of problems that would arise if section 6700 penalties are divisible when a taxpayer earns at least $1,000 per sale and nondivisible when a taxpayer earns less. First, such a reading places too much emphasis on a single penny. For example, two people could each sell 1,000 abusive tax shelters, but if the first person grosses $999.99 per sale, and the second grosses $1,000, the first person would have to pay $999,990 to get into court, whereas the second could pay only $1,000 of the $1,000,000 penalty.[5] Second, participants in tax shelters would be incentivized to structure transactions that always result in at least $1,000 in gross income from every sale, thereby ensuring that a $1,000 payment would get them into court. Third, Defendant's position is not well attuned to complicated transactions, such as the following scenario discussed in American Jurisprudence's Federal Taxation volume:

> Promoter P is selling interests in two tax shelter partnerships with respect to which he makes false statements. A, B and C invest in each partnership, but B and C split an interest in the second partnership. P's gross income from the sales is $1,500 for a full share and $750 for a half share. Each sale to A, B and C is a separate activity. P can be penalized $5,500 ($1,000 for each sale to A; $1,000 for each full share sold to B and C; and $750 for each half share sold to B and C).

34 Am.Jur.2d *Federal Taxation* § 71805. In the above example, would the promoter have to pay the full $5,550 because the gross income from two of the activities was less than $1,000? Would the promoter be able to pay$2,500, which would reflect one of the $1,000 penalties and both of the $750 penalties? Could the promoter just pay one of the $1,000 penalties? Defendant's reading of section 6700 does not provide for a principled method for dealing with transactions that result in gross incomes of both more and less than $1,000.

Finally, Defendant argues that challenging questions will remain if this Court determines that section 6700 penalties are divisible regardless of the per sale gross

---

5. The above example assumes jurisdiction through the divisible tax exception to the full-payment rule. The first taxpayer could instead pay 15% under section 6703(c), which is $144,998.50; but this amount is still roughly 150 times more than the second taxpayer would pay under the divisible tax exception.

income, and thus "Congress intended the 6700 penalty to be … nondivisble when it is assessed based on gross income derived [per sale]" [Doc. No. 7, p. 8]. Nevertheless, Defendant's questions can be answered. Furthermore, the questions relate equally to $1,000 penalties. If the questions somehow reveal Congress's intent that a penalty be nondivisible if less than $1,000, then Defendant seemingly argues that Congress also intended for $1,000 penalties to be nondivisible. Yet, Defendant already conceded that an assessment comprised of $1,000 penalties would result in a divisible assessment.

First, Defendant asks, "What is the amount of the divisible assessment?" [*id.*]. The amount is a single penalty from a single sale. For example, in this case, the amount of the overall penalty is $101,459, which represents Plaintiff's cumulative sales. Plaintiff would need to pay the penalty for a single sale in order to file suit; and based on the IRS's explanation of items, that would likely be $500. And the answer is the same no matter if the penalty is $1,000 or less. As the statute provides, the penalty is per transaction, 26 U.S.C. § 6700(a), and as the divisibility cases have repeatedly held, a taxpayer need only pay the penalty on one transaction. *See, e.g., Noske,* 911 F.2d at 137.

Second, Defendant poses this question: "Is the penalty divisible by total gross income or annual gross income?" [Doc. No. 7, p. 8]. The Court is not sure what Defendant asks. The statute clearly states that the penalty is per transaction, and the amount is the lesser of $1,000 or the gross income received from the single transaction. 26 U.S.C. § 6700(a). Defendant might be asking if a taxpayer must only pay the penalty on a single transaction, even when there were multiple transactions spread over several years, or Defendant might be asking if the taxpayer

would have to pay a single penalty for every year in which a transaction occurred. The statute does not explicitly address this question for either penalties of $1,000, or lesser penalties. And the questions has no bearing on the facts of this case because Plaintiff paid $15,220.35 towards her overall penalty, which is more than enough to cover a single penalty for each of the three years she sold shelters [*see* Doc. No. 4–1., p. 4].

Third, Defendant poses this question: "Is the penalty based on the actual income derived from each sale or does the amount of the penalty default to the $1,000 penalty that can be imposed per transaction?" [Doc. No. 7, p. 9]. The court assumes that Defendant is asking if a taxpayer would have to pay $1,000 to invoke jurisdiction, even when the gross income from a sale is less. The rule regrading divisible penalties is clear: "payment of only one of the assessed penalties provide[s] subject matter jurisdiction in the United States district court." *Cohen,* 844 F.Supp. at 761. And the statute is clear that the penalty is the lesser of $1,000 or the gross income received from the single transaction. 26 U.S.C. § 6700(a). Therefore, if each of the sales resulted in gross income of $1,000 or more, the taxpayer could pay one of the $1,000 penalties. If some of the sales were $1,000 or more, and others $500, the taxpayer could pay either $1,000 or $500; after all, "payment of only one of the assessed penalties" is the requirement. *See Cohen,* 844 F.Supp. at 761. And if some sales grossed $750 and others $500, either $750 or $500 would do.

Therefore, Plaintiff could satisfy the payment requirement so long as she paid the full penalty owed on a single sale, and whether or not Plaintiff needed to pay on a yearly basis, the amount due here was no greater than $2,250. Plaintiff paid roughly

$15,000; accordingly, she has paid enough of the Penalty to invoke jurisdiction.

## C. Plaintiff Fulfilled the Other Jurisdictional Requirements

Finally, because Plaintiff paid an adequate portion of her penalty, jurisdiction exists so long as Plaintiff also filed for a refund with the IRS, waited until the refund claim was denied or 6 months had passed (whichever was earlier), and then filed the claim within 2 years of being notified that the refund claim was denied. 26 U.S.C. §§ 6532(a), 7422(a); *Flora*, 362 U.S. 145, 155, 176, nn. 37–38, 80 S.Ct. 630.

Plaintiff met the above requirements. She filed a refund claim on October 9, 2007 [Doc. No. 1–9, p. 1]. The refund claim was denied on October 20, 2009. She then brought this action on May 5, 2010, which was more than 6 months after filing for a refund and within to years of the refund being denied.

## II. Counts I and II

Defendant's sole argument regarding dismissal of Counts I and II is that this Court lacks jurisdiction over Plaintiff's claims because she sued too late, and she paid too little. As the Court discussed above, jurisdiction exists; therefore, Counts I and II will not be dismissed.

## III. Counts III and IV

In Counts III and IV, Plaintiff seeks to enjoin the IRS from enforcing her Suspension, which suspension will expire in April of 2012. Defendant argues that Plaintiff cannot show that the decision to suspend her was " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' " [Doc. No. 4–1, p. 11 (quoting 5 U.S.C. § 706(2)(a)) ].

■ " 'An agency rule may be deemed arbitrary, capricious or an abuse of discretion if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.' " *Brenner Income Tax Ctrs., Inc. ex rel. Brenner v. Dir. of Practice of the I.R.S.*, 87 F.Supp.2d 252, 257 (S.D.N.Y.2000) (quoting *Henley v. Food & Drug Admin.*, 77 F.3d 616, 620 (2d Cir. 1996)).

The IRS suspended Plaintiff from its e-file program pursuant to Revenue Procedure 2007–40 and Publication 3112, which provide for suspension when a tax preparer has civil penalties assessed against her [Doc. 1–16, p. 1 (citing Rev. Proc. 2007–40, §§ 2, 7; IRS Pub. No. 3112, pp. 31–33) ]. The Penalty underlying the Suspension was for the sale of abusive tax shelters, which Plaintiff now challenges [Doc. No. 1–16, p. 1].

If Plaintiff successfully challenges the Penalty, the basis for her suspension will no longer exist, and the decision to suspend her would run counter to the evidence. That is, the decision to suspend her would likely become "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; in which case, Plaintiff could obtain injunctive relief. In the same vein, if Plaintiff can show a likelihood of success on her challenge to the Penalty, she might also obtain preliminary injunctive relief. Thus, Defendant's motion to dismiss Counts III and IV must be denied.

## IV. Counts V and VI

Defendant's sole argument regarding Counts V and VI is that they cannot stand alone if Counts I through IV are dis-

missed. Counts I through IV stand, and so do Counts V and VI.

## CONCLUSION

For the reasons given above, Defendant's Motion to Dismiss [Doc. No. 4] is **DENIED.**